**Jack Bliss, Esq.**
**34 South Broadway**
**White Plains, New York**
**Tel (914) 761-3600**
**Fax: (914) 761-8736**

November 15, 2009

Unite States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

Hon. Sandra Feurstein DCJ

Re: Dama v. Dharia etc 09-cv-434-

Hon. Sandra Feurstein:

Please consider this a letter motion to file an amended complaint in the above referenced matter. The original complaint was filed pro se and the purpose of the amended complaint is spell out with particularity the basis for the relief sought. There is no prejudice because counsel for defendant has agreed to the extensions to file and has been promised adequate opportunity to answer.

Thank you

Respectfully

Jack Bliss

Jack Bliss, Esq.

cc:    Lee Albin
       666 Old country Road
       Garden City, New York 11530

Tel: (516) 794-4282
Fax; (516) 228- 9514

STATE OF NEW YORK)                                        AFFIDAVIT OF
COUNTY OF WESTCHESTER)          ss.:            SERVICE BY MAIL

CASE NAME:  KESAV DAMA v. FALGUN DARIA

DOCKET NUMBER:  07-CV-9754

I,  Matthew K. Darlington, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age, and resides in Millwood, New York.

On   November 16, 2009

Deponent served  one copy of the within Second Amended Complaint

upon

M. Lee Albin
666 Old Country Road
Garden City, New York
11530

Counsel for Defendant
FALGUN DHARIA

the address designated by said attorney for that purpose by depositing true copies of same enclosed in a post-paid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
                              Matthew K. Darlington

Sworn to before me

_____
THERESA GENTILE
Notary Public, State of New York
No. 01GE5037654
Qualified in Westchester County
Commission Expires January 3, 2011

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

Case No.09-CV-(434 )

KESAV DAMA, VENKAIAH DAMA,
HEMANK DAMA, ATUL MODY, and
PRASAD CHIMMIRI, individually and
Derivatively upon behalf of PRP NEPTUNE
BEACH LLC and/or upon behalf of
PRP BROOKLYN EATERY, LLC, for
Themselves and upon others similarly situated

        Plaintiffs,

vs.

FALGUN DHARIA; individually and as
Representative of MANTIFF
MANAGEMENT CORP. and other
"Mantiff" corporations acting upon his
Behalf and through which he conducted his
Illegal activities,

        Defendants.

SECOND AMENDED
COMPLAINT

 

The Plaintiffs KESAV DAMA, VENKAIAH DAMA, HEMANK DAMA,

ATUL MODY, and PRASAD CHIMMIRI, individually and derivatively upon

behalf of PRP NEPTUNE BEACH LLC and/or upon behalf of PRP BROOKLYN

EATERY, LLC, for themselves and upon behalf of others similarly situated, allege

as follows:

## THE PARTIES

1.      a. Plaintiff KESAV DAMA is an individual residing in Flushing, New York and at all times relevant here was an investor in plaintiff PRP Neptune Beach LLC, an entity formed as principal investor in a motel project in the State of Florida, established by Defendant Falgun Dharia ("THE FLORIDA MOTEL PROJECT"), and through which he committed criminal acts of fraud and mismanagement against the Plaintiffs, causing them to lose their entire investments, and which thereby forms the basis for this RICO action.

b. Plaintiff VENKAIAH DAMA is an individual residing in Jamaica Estates, New York and at all times relevant here was an investor in plaintiff PRP Neptune Beach LLC, an entity formed as principal investor in a motel project in the State of Florida, established by Defendant Falgun Dharia ("THE FLORIDA MOTEL PROJECT"), as well as in plaintiff PRP Brooklyn Eatery, also a plaintiff herein, and which became the principal investor in a Houlihan's Restaurant business in Brooklyn, New York, established and operated by Defendants, and through which he committed criminal acts of fraud and mismanagement against the plaintiff, causing him to lose his entire investment, and which thereby forms the basis for this RICO action, as set forth herein.

c.   Plaintiff ATUL MODY is a resident of Parlin, New Jersey, and was likewise an investor in PRP Brooklyn Eatery, as alleged above, by which defendants caused him to lose his entire investment through a pattern of criminal frauds which forms the basis for this RICO Action as set forth herein.

d. Plaintiff PRASA CHIMMIRI is an individual residing in Jamaica Estates, New York, and was an investor in both PRP Neptune Beach LLC, and PRP Brooklyn Eateries, and as described above suffered losses at the hands of defendants, forming the basis for this RICO Action as set forth herein.

2.   Upon information and belief, Defendant FALGUN DHARIA is an individual residing in the State of New Jersey, and is the prime or full owner of Defendant Mantiff Management, and other "Mantiff" corporations similarly situated, with principal offices located in the State of New Jersey, and which are owned and operated by this defendant, through which he committed various acts of intentional, criminal fraud, which form the basis for this RICO ACTION. Whenever Defendant Falgun Dharia, or F. Dharia is mentioned in this complaint it shall be understood that this includes his agents, representatives, and other parties with whom he conspired to commit the acts alleged herein.

## NON-PARTIES

2072539v1                                                    3

3.  AFHK, LLC was an entity established and designated by Defendant FALGUN DHARIA, for the purposes of becoming the owner and operator of the Brooklyn Restaurant.

4.  PRP Brooklyn Eatery was a shell corporation established by Defendant FALGUN DHARIA as part of his scheme to inflate his ownership interest and become a 50% owner in AFHK, LLC, for the Brooklyn Restaurant,, which was far greater than he had represented to plaintiffs, and was not justified by an investment of his own capital. As such it was an "enterprise" through which he carried out his fraudulent scheme, as alleged herein, and as defined by the RICO statutes.

### JURISDICTION

5.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest.

6.   In  the alternative, this action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq.*, and various other New York State common law doctrines or statutes.  Jurisdiction is vested in this Court by virtue of 17 U.S.C. § 501(b) and 28 U.S.C. § 1331.   Plaintiffs' claims brought under New York law are so related to Plaintiffs' federal claims, over which the Court has original jurisdiction,

that they form part of the same case or controversy.  Under Article III of the United

States Constitution, the Court has jurisdiction over Plaintiffs' New York common

law and statutory claims pursuant to 28 U.S.C. § 1367.

7.     A substantial part of the events and omissions giving rise to the claims

stated herein occurred in this District, a substantial part of the property that is the

subject of this action is situated in this District, and at least one defendant is found in

this District and there are no districts wherein all defendants are found.  Venue is

proper in this District and Division pursuant to 28 U.S.C. §§ 1391(b) (2) and (3) and

pursuant to 18 U.S.C. § 1965(b).

## INTRODUCTORY ALLEGATIONS

## a. The Misrepresentations and False Promises made by defendant with the fraudulent, criminal intent of plaintiffs to invest in Defendant's ventures

8.  That as set forth below, and as the basis for the RICO claims made

herein, as well as related state fraud claims, defendant Falgun Dharia, by himself,

through his "enterprises", and in conspiracy with others presently unknown,

engaged in a scheme to defraud plaintiffs into contributing monies to his ventures,

for the purpose of converting these monies to his own benefit; by:

a.  Misrepresenting the true facts and circumstances of his applying for an

SBA loan for the subject project, while hiding the fact that he had several SBA

loans pending, each one of which constituted a fraud on the SBA for his failure to

reveal that multiple SBA applications had either been made or were pending; also misrepresenting the ownership interests of the parties and entities seeking such financing, which if discovered would effectively place all such SBA loans in immediate default;

b. Misrepresented that he was getting an SBA Loan through legal means so that the loan funds, together with their investment, would adequately fund a successful Houlihan's Restaurant in Brooklyn – when in fact he was filing false and fraudulent applications so that the loans were in default; he also defrauded Plaintiffs PRP Neptune Beach LLC, and PRP Brooklyn Eatery LLC out of $1.8 Million.

c. Misrepresenting that he had invested his own monies in the projects, and that his real ownership interests were far greater than he had represented to both the investors and the SBA; all as a means to induce and extort additional monies from the investors;

d. Falsely representing that the construction costs for the project were greater than they actually were as a means for extorting additional monies from the investors;

e. Providing false accountings of monies spent in the project to the investors, when demanded, all as a means for extorting additional monies from the investors;

f. Defendant F. Dharia used his close personal relationships, close personal ties to the Asian Indian community, common cultural and ethnic background to that of Plaintiffs, all to fraudulently induce Plaintiffs to invest in the 2 LLC's he owned and controlled, making false and fraudulent misrepresentations about material facts concerning the transaction, as well as his integrity and expertise involving the business of operating a restaurant.

g.   Defendant Falgun Dharia breached his fiduciary duty owed Plaintiffs as investors who entrusted their monies with him, by failing to disclose material facts surrounding the transaction, by engaging in self-dealing and fraudulent conduct in the formation, management and operation of the partnerships by, inter alia, failing to disclose material facts, and by taking, using and diverting the assets of the partnerships to himself or for his own benefit. Some of the misrepresentations and acts of fraud:

1. That he was a successful businessman with expertise running businesses who induced Plaintiffs to invest in the businesses set forth herein, by falsely and fraudulently guarantying high rates of return on their investment, when in fact he intended to take their money and put it in his own pocket, never investing in the businesses as he had represented, all the while causing them to fail.

2.  That he deliberately overfunded the projects with both plaintiffs investor monies and loans obtained through SBA, as a means of siphoning monies

to himself, while falsely claiming that he was legitimately reimbursing himself for expenses he never expended; secretly returning monies to himself by inflating the costs of the project, and secretly taking loans on the project through bank fraud, while pocketing the monies to himself.

3.   That he periodically gave investors false accountings by overinflating expenses, as well as his own capital contributions, and filed fictitious and false tax returns to the IRS, thus committing criminal tax fraud, all designed to induce them into making further investments, while pocketing monies to himself.

10.   When plaintiff investors balked at delivering more monies demanded by Defendant F. Dharia, he threatened to litigate against them, and threatened to destroy their equity interests in the businesses, leaving them with nothing. Through such criminal extortion he effected the delivery of more monies by Plaintiffs, all of which was lost.

**The Brooklyn Eatery Investment: Houlihan's Restaurant Franchise and the Frauds Committed by Defendant F. Dharia with respect to that Venture**

11.   Defendant F. Dharia through fraudulent and extortionate means induced Plaintiffs to invest monies in a Houlihan's Restaurant, located at 139 Atlantic Avenue, Brooklyn, N.Y.

12.   Defendant F. Dharia, through fraudulent and extortionate means, induced Plaintiffs to invest by misrepresenting, inter alia, that he could obtain and

SBA Guaranteed loan through a local bank (PNC Bank), that together with their investment, would provide sufficient capital to obtain the leasehold and construct a restaurant at the premises under the successful Houlihan's franchise name.

13. In fact, the loan that Defendant F. Dharia secured through SBA was obtained through false and fraudulent means, by, inter alia:

a. He Forged the signature of one of the Plaintiffs Hemank, Dharia (no relation), to the loan application, and as well he forged that signature on a subsequent personal financial statement submitted to the SBA, without the knowledge and consent of Hemank Dharia, while materially misstating the assets of Hemank Dharia to the Bank;

b. Without the knowledge or consent of SBA or the lending Bank, PNC as required by its own rules, Defendant took the sum of $1.4 Million Dollars from the loan proceeds at closing, to his own account and own benefit; all of which constituted a criminal bank fraud, as well as a fraud upon investors, as set forth herein. Defendant's excuse for taking this money was that it was a reimbursement for monies he had put into the business; when in fact there was no proof that he actually did so, because he failed to account for his alleged contributions;

c. He misrepresented in the SBA loan application that he would be devoting $1,170,000 of the loan proceeds to "Leasehold Improvements" for the

restaurant, which was a purposeful understatement of the actual costs, which if it had been known to the Bank may have resulting in declining the loan application.

d. When the loan closed on July 29, 2005 Defendant refused to disclose how the loan proceeds were distributed, nor did he divulge to PNC Bank, as required by the rules as a condition of the loan, that there was a change of ownership, wherein in the application to the Bank submitted in March 2005 defendant had listed as 49% ownership in Plaintiff Hemank Dharia, 5% in Atul Mody, 18% for Defendant Falgun Dharia, and 18% for Nita Panchal, and 10% for Albert Bilello, wherein the ownership alleged in the corporate resolution authorizing the Bankruptcy filing inconsistently for 50% for PRP Brooklyn Eatery (plaintiffs) and 40 % a wholly owned alter-ego company of defendant, Mantiff Management, and 10% for Nita Panchal.

e. Defendant Falgun Dharia purposefully refused to disclose the loan application to plaintiffs so that they could make an informed decision as to their investment, and so that they could determine whether his statements of leasehold (construction) costs were accurate.

f. When plaintiffs demanded an accounting by Defendant F. Dharia to verify monies that he contributed; monies that he took, and the actual monies expended for leasehold improvements, he produced a purported QuickBooks ledger accounting, which disclosed nothing; while effectively thwarting their

investigation through means of fraudulent lawsuits and bankruptcy filings, as set forth herein;

g. After defendant F. Dharia converted the proceeds of the bank loan, as set forth herein; and failed to capitalize the Brooklyn Restaurant investment, he demanded still more monies from Plaintiffs, over and above their original investments, under threats made to plaintiffs that if they did not deliver additional capital demanded they would lose their entire investment;

h. Upon information and belief, as part of his conspiracy  to defraud plaintiffs, as well as part of his bank fraud, he inflated construction costs in collusion with certain contractors, while falsely representing to plaintiffs in order to induce their capital investment that it was to be on a fixed cost basis, when it turned out that the actual construction was not on a fixed cost basis; but generally inflated his costs estimates, first to $1.8 Million, and then the astounding amount of $3.75 Million dollars. Despite repeated demands, defendant failed and refused to disclose any capital that he contributed to this venture.

i. The same misrepresentations made to plaintiff concerning the contract basis formed the basis of another fraud upon the SBA guaranteed loan by the PNC Bank, since defendant failed to represent to the Bank the true nature of the construction contract, i.e., that it would inflate way beyond the original estimates.

j. The exact amount of plaintiffs' investments cannot be specified at this time, but they well exceeded $1.5 Million dollars, all as a result of defendant's fraudulent and extortionate conduct set forth herein.

### The Bank Fraud Allegations

14. Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs "1" through "13" which relate to fraud upon the Bank regarding the SBA Loan for the Brooklyn restaurant, as though fully set forth at length herein.

15. More specifically than has already been alleged herein, defendant committed Bank Fraud, in violation of federal law and therefore forming the basis of a RICO violation, as follows:

a. In furtherance of his criminally fraudulent scheme defendant F. Dharia forged the signature of one of the plaintiffs, without that person's knowledge and consent;

b. Falsely represented that he had contributed his own monies to the business, which he used as an excuse for "reimbursing himself $1.4 Million dollars, when in fact, as he later admitted on 2006 Tax Returns, he contributed not one penny to the business.

c. As set forth he understated his ownership interest to avoid certain disclosure required by rule of law, concerning other SBA loans with which defendant was a participant or affiliated with; while falsely misrepresenting other investor partnership

interests; while in other respects the application was replete with misrepresentations as to capital and ownership of the underlying business;

    d. He continually manipulated his "stated" ownership interests on various filings without making any additional capital contributions to the venture, or for a valid business purpose, but rather to suit his own purposes, without informing the Bank and SBA as the guaranteeing institution, as required by law;

    1. For instance in 2006 he changed his ownership interest to from 40% to 10% out of the goodness of his heart, when in fact he did so to avoid his personal guarantee for the loan,

    2. In fact, this change of ownership was apart of defendant's scheme to avoid personal liability for the bank loan which he had applied for ,while attempting to foist on plaintiffs the obligation to guarantee the loan;  through a subsequent purchase asset agreement which in 2006 he threatened them that if they did not agree to the asset purchase for $2.2 Million Dollars, they would forfeit their entire investment; the asset purchase agreement was in fact a phony agreement with forged signatures; as a result of these threats, plaintiffs made additional capital contributions in the amount of at least $300,000

    e. Made threats to plaintiffs to extort more monies from them, as set forth above, while failing to disclose to SBA, as required under the application

process, any such additional capital contributions; and failed to disclose to SBA the additional monies he raised through such extortionate means;

### Other and Further Fraudulent, Extortionate and Criminal Conduct against Plaintiffs

16. Specifically, in July 2006 at a certain meeting with some or all of the plaintiffs, defendant informed them that the business was losing money, and that he had found an unidentified purchaser of the restaurant for $2.1 Million dollars, and that unless plaintiffs purchased the assets for this $2.1 Million which would pay off the Bank Loan, then in the principal amount of $1.95 Million dollars, by signing an asset purchase agreement he had foisted upon them, he would complete the third party sale and they would lose their entire investment.

17. That the aforestated actions of defendant Falgun Dharia were a means, as part of his criminal scheme, to be removed from any liability for the PNC Bank Loan, and foist liability upon plaintiffs. That defendant attempted to carry out his threats by suing plaintiffs in State Court for specific performance of the asset purchase agreement, after forging certain signatures thereon.

18. That defendant, in order to avoid disclosure of his criminal acts with respect to the financing of the business, filed a bankruptcy for AFHK, the corporate entity for the Brooklyn restaurant, in the Eastern District of New York, when in fact

his intent was to avoid financing disclosures, and not for the legal purpose of liquidating the business, which was a fraud on the court;

19.  That by reason thereof, Defendant Falgun Dharia committed a fraud upon the bankruptcy court with respect to such a filing, using defendant's alter ego, the shell corporation known as "Mantiff" as the purported managing agent of the bankrupt AFHK without the knowledge or authorization of the owners, and whereby said filing was made by defendant, without proper authorization of the true owners of the bankrupt corporation, and without notice of filing to the investors, including plaintiffs

### The Harm to Plaintiffs as a Result of Defendant's Fraudulent, Extortionate and Criminal Conduct

20.  That plaintiffs, in reliance upon the many misrepresentations of the defendant, and as a further result of the extortionate conduct he perpetrated upon them, as set forth above, were harmed in that the monies they contributed to the venture, both in the beginning and in the course of events, were lost forever.

21. That plaintiffs were induced to invest these monies based upon, inter alia, defendant's misrepresentation that their investment would be subsidized, backed and matched by loan funds through the SBA guaranteed loan, with the full faith and credit of the United States as such loans represent, when in fact defendant, in obtaining this loan through fraudulent means, as set forth above, knew or should have known that it was in default by its own terms, so that there was a strong likelihood

that the loan would be accelerated long before it was due, threatening the security of the underlying investment.

22. All the while, as set forth above, defendant withheld from investors, as well as from the SBA with respect to the loan transaction, important and material information, which if known by them, would have caused the loan to be called, and which would have dissuaded plaintiffs from making further capital contributions; as follows:

a. That he was siphoning cash from the business, leaving it undercapitalized and unable to meet its debt, and which eventually caused the venture to fail, all of which he failed to disclose to SBA

b. He mislead the SBA, as set forth above, placing the loan in immediate default, by failing to disclose the actual capitalization and ownership structure of the venture.

c. As a result of defendant's deliberate undercapitalization, inflation of costs, and refusal to operate the business in a manner other than to guarantee its failure, the business lost its lease, and was forced to close; leaving plaintiff investors, and others, with unforeseen liabilities to the New York State Tax Authorities, for unpaid sales tax; as well as a potential liability to the PNC Bank for the defaulted loan.

**Mail & Wire Fraud**

23.   Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs "1" through "22", as though fully set forth at length herein.

24.   Pursuant to the aforestated criminal conspiratorial Scheme to defraud Plaintiffs and induce them to part with their investment, Defendant  Falgun  Dharia could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.  In particular, Defendant Falgun Dharia could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, facsimile coversheets, invoices, billing statements, website pages, envelopes, stationary, marketing materials, press releases and announcements containing defendant Falgun Dharia's fraudulent misrepresentation; emails and correspondence among and between Defendant Falgun Dharia and the Banks, with whom he was dealing to procure the SBA loan through fraudulent means, as set forth above, and with the U.S. Bankruptcy Courts through which he was carrying out his fraudulent concealment of financial books and records from Plaintiffs; and who knew he would commonly be traveling in interstate commerce at the time they received or sent the subject emails or correspondence; and emails and correspondence from Falgun Dharia to the Banks, the Bankruptcy Court, and the Plaintiffs.

25.   Defendant Falgun Dharia,  acting singly and in concert with his commonly owned enterprises under the name "Mantiff", personally or through his agents, as co-conspirators, or as aiders and abettors, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out the aforestated criminally conspiratorial  Scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

26.   It is not possible for Plaintiffs to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the aforestated criminally conspiratorial Scheme,  because the particulars of many such communications are (or were) within the exclusive control and within the exclusive knowledge of  Falgun Dharia,  as  perpetrators thereof; and/or other presently unknown individuals.

27.   By way of example, however,  Falgun Dharia specifically used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver each and every K-1Partnership statements and documents sent to the Bank lending the money, which bearing his name and/or the name of his wholly owned "alter ego" enterprises, under the various "Mantiff" names between the aforestated dates of the acts set forth above; and to deliver all of the following communications,

among others, for the purpose of advancing, furthering, executing, and concealing the

Scheme:

| Type of Communication | Date | From | To | Regarding |
|---|---|---|---|---|
| Mail/wire | 3.21.05 | F. Dharia | SBA/Lending Bank | Fraudulent SBA /Bank Loan application |
| Mail /wire | 4.14.05 | F. Dharia | SBA/ Lending Bank | Fraudulent Attachment to SBA/ Bank Loan Application |
| Mail/wire | 6.27.08 | F. Dharia | U.S. Bankruptcy Court | Corporation Resolution of AFKH Illegally Authorizing the Filing for Chapter VII Bankruptcy, by "Mantiff" Mgmt., Inc. as 50% Shareholder |
| Mail/Wire | 02.03.09 | F. Dharia | U.S. Bankruptcy Court | Similar illegal Corporate Resolution by "Mantiff Cheyenne", Authorizing F, Dharia to file a Chapter VII Bankruptcy in another proceeding in a related fraudulent investment scheme, establishing a "pattern" |
| Mail/ Wire | 8.25.08 | F. Dharia | U.S. Bankruptcy Court | Similar illegal Corporate Resolution by "Mantiff Jackson", Authorizing F. Dharia |

| | | | | |
|---|---|---|---|---|
| | | | | to file a Chapter VII Bankruptcy in another proceeding in a related fraudulent investment scheme, establishing a "pattern |
| Mail/Wire | 09.01.08 | F. Dharia | U.S. Bankruptcy Court | Similar illegal Corporate Resolution by "Mantiff Dayton", Authorizing F, Dharia to file a Chapter VII Bankruptcy in another proceeding in a related fraudulent investment scheme, establishing a "pattern |
| Mail/Wire | 09.04.06 | McElroy Law Firm upon behalf of F.Dharia/client | Plaintiff-Investors | Through Fraud, Coercion and Duress Attempting to Intimidate Plaintiffs-Investors to Invest Additional Funds under Threats of Litigation and Loss of Entire Investment |

28.     In advancing, furthering, executing, concealing, conducting,

participating in, or carrying out the aforestated Scheme, Falgun Dharia also used the

U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate

wires to be used, *inter alia*, to make a fraudulent application for an SBA loan with

the PNC Bank, to exchange correspondence with the SBA, PNC Bank and their

agents and representatives, regarding that loan, to forward correspondence to

Plaintiffs regarding that loan application, to arrange for, to arrange for , and to deposit funds with the PNC Bank, and other accounts owned by Falgun Dharia.

29.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by Falgun Dharia, with the specific intent to defraud Plaintiffs and others similarly situated, or for obtaining the money or property of Plaintiffs, and others by means of false or fraudulent pretenses, representations, or promises, constituting acts of mail and wire fraud in violation of 18 U.S.C. §§1341 and 1343; and constituting racketeering activity as defined by 18 U.S.C. §1961(1) (B).

30. As a result of defendant Falgun Dharia's fraudulent and criminal behavior set forth herein, Plaintiffs were induced to part with their investment, and had their investment stolen by defendant through said means.

## Bank Fraud

31.    Pursuant to the aforestated Scheme, including but not limited to the allegations constituting fraud upon the lending banks and USBA, Falgun Dharia knowingly executed a scheme or artifice to obtain the moneys, funds, credits, assets or other property under the custody or control of various financial institutions by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1344 in that the scheme, among other things, caused the bank to transfer funds from accounts of AFGH Brooklyn Restaurant account(s) into accounts

controlled by Falgun Dharia personally and through his corporations and other enterprises owned and/or controlled by him.

## Extortion

32.     Pursuant to the aforestated Scheme, Falgun Dharia attempted, conspired and committed acts designed to obstruct, delay or affect commerce by extortion and committed or threatened physical violence to persons or property in furtherance of a plan or purpose to extort in violation of 18 U.S.C. § 1951.

33.     Such acts included threatening Plaintiffs that:

a. Unless they agreed to the asset purchase agreement by contributing an additional $2.2 Million, he would sell the business to others causing them to lose their entire investment., whereupon defendant actually sued the Plaintiffs in State Court for specific performance of that agreement, causing them to expend funds to hire attorneys and defend themselves against a frivolous state law suit; and

c. Unless they signed the asset sale agreement, he would cause them to become personally liable to PNC Bank for the bank loan he obtained through aforestated fraudulent means; and

34.     These threats caused Plaintiffs, and others to reasonably fear that they would lose their monetary investments, which was intended to cause and was capable of causing economic harm to themselves or others.

## COUNT ONE
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)
## (The Criminal Conspiracy Scheme)

35.     Plaintiffs reallege and restate paragraphs "1" through "34" inclusive, as though fully set forth at length herein.

36.     At all relevant times, the "Mantiff" enterprises wholly owned by Falgun Dharia and, constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that it was a corporation utilized by him to carry out his fraudulent scheme.

37.   Falgun Dharia, and Nita Panchal were an individual "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

38.   Between the aforestated dates set forth above,  Falgun Dharia conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The aforestated pattern of racketeering activity consisted of Mail and Wire fraud (as described with particularity in paragraphs "23"-"30",

*supra*), Bank Fraud  (as described in paragraph "31", *supra*); and Extortion (as described with particularity in paragraphs "32"-"34", *supra*).

39.    These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

40.    In the alternative to paragraph "36" (describing "the enterprise"), at all relevant times, some or all of the following individuals constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were "a group of individuals associated in fact":   Falgun Dharia and others, presently unknown, as other individuals with whom he conspired,

(a)    Said individuals described in paragraph "37" are "persons", within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who each individually associated with and/or participated in the conduct of said enterprise's affairs.

(b)    Between the aforestated dates set forth above, each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).  The aforestated pattern of racketeering activity consisted of mail and wire fraud (as described with particularity in paragraphs "23"-"30 ", *supra*), Bank Fraud (as described with particularity in paragraph " 31 ",

*supra*); and extortion (as described with particularity in paragraphs " 32"-"34 ", *supra*).

41.    These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

42.    At all relevant times, the "enterprises" alleged in paragraph "118" (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

43.    All of the predicate acts described in paragraphs "1" –"34" (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud the Plaintiffs, their common result was to defraud Plaintiffs of money; Falgun Dharia and others presently unknown with whom he conspired, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

44.    All of the predicate acts described in paragraphs "1" through "34" (*supra*) were continuous so as to form a pattern of racketeering activity in that they engaged in the predicate acts over a substantial period of time or in that such predicate acts had become their regular way of conducting business.

45.     As a direct and proximate result of, and by reason of, the activities of Falgun Dharia and others presently unknown with whom he conspired, and their conduct in violation of 18 U.S.C. §§ 1962(c), Plaintiffs have been injured in their business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Plaintiffs have suffered damages to the extent that Plaintiffs lost their entire monetary investment, while suffering further monetary losses by incurring expenses in defending frivolous lawsuits as set forth above.

46.  Plaintiffs are, therefore, entitled to recover threefold the damage it has sustained together with the cost of the suit including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT TWO

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### 18 U.S.C. § 1962(d)
### (Conspiracy – to Defraud Plaintiffs and Steal their Investment)

47.     PLAINTIFFS reallege and restate paragraphs "1" through "46".

48.     With regard to Falgun Dharia and others presently unknown with whom he conspired, Plaintiffs alleges in the alternative to Count One that these individuals intended to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity (*see supra* ¶ *"44")* in violation of 18 U.S.C. § 1962(d).  In particular, Falgun Dharia and others presently unknown intended to further an endeavor of stealing Plaintiffs' monetary

investment, which, if completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted the goal of furthering or facilitating the criminal endeavor.

49.     Plaintiffs are injured by the aforestated overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) the aforestated pattern of racketeering activity consisted of mail and wire fraud (as described with particularity in paragraphs "23- "30" and 44", *supra*), Bank Fraud (as described with particularity in paragraph "31", *supra*); and extortion (as described with particularity in paragraphs "32"-"34", *supra*).

50.     As a direct and proximate result of, and by reason of, the activities of Falgun Dharia and others presently unknown with whom he conspired, and his conduct in violation of 18 U.S.C. §§ 1962(d), PLAINTIFFS have been injured in their business or property, within the meaning of 18 U.S.C. §1964(c).   Among other things, Plaintiffs have suffered damages to the extent that Plaintiffs lost their entire monetary investment, while suffering further monetary losses by incurring expenses in defending frivolous lawsuits as set forth above.

51.     Plaintiffs are, therefore, entitled to recover threefold the damages they have sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT THREE

## CONSPIRACY TO ENGAGE IN PROMISSORY FRAUD

52.     Plaintiffs repeat and reallege paragraphs "1" through "46" as though fully set forth at length herein.

53.     Plaintiffs allege that Falgun fraudulently induced Plaintiffs to invest their monies with him into the Brooklyn Restaurant venture ("the venture"), by promising, inter alia, that he would obtain a valid SBA Loan and place those funds into the venture, would put his own monies into the venture, would sufficiently capitalize the venture to cause it to become successful; and otherwise that he had the expertise and wherewithal to effect a successful venture and make them a lot of money, amongst other promises.

54.     Plaintiffs justifiably relied on these promises of defendant in making their investment with defendant.

55.     Falgun Dharia made these promises, without the intention to perform them, thus constituting promissory fraud.

56.     Falgun Dharia had an agreement with others presently unknown, whereby he knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and otherwise further this scheme to engage in promissory fraud with regard to Plaintiffs.

57.     Falgun Dharia engaged in numerous wrongful acts pursuant to his agreement with others presently unknown, including (among other acts) filing false

and fraudulent loan applications, stealing funds from the business to his personal use, misstating his own capital contributions to the business venture.

58.   As a direct and proximate result of Falgun Dharia's conspiracy to engage in promissory fraud, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of One Million Five Hundred Thousand ($1,500,000) Dollars.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY
### (Falgun Dharia and others presently unknown)

59.   Plaintiffs reallege and restate paragraphs "1" through "46 as though fully set forth at length herein.

60.   By virtue of the agreement by which Falgun Dharia would invest Plaintiffs' monies with the business venture, a fiduciary relationship existed between Falgun Dharia and Plaintiffs, and Falgun Dharia owed fiduciary duties (in particular, the duty of full and fair disclosure and to make true representations concerning the venture and all aspects thereof) to Plaintiffs.

61.   In the alternative to paragraph "60", supra. Falgun Dharia owed fiduciary duties to Plaintiffs by virtue of the confidential relationship that existed between Falgun Dharia and Plaintiffs, whereby Plaintiffs justifiably placed trust and confidence in the integrity and fidelity of Falgun Dharia.

62.     As a fiduciary of Plaintiffs, Falgun Dharia was required to act with the utmost good faith for the benefit of Plaintiffs and was prohibited from taking advantage from his acts relating to the interests of Plaintiffs without Plaintiffs' knowledge and consent.

63.     Falgun Dharia breached the fiduciary duties he owed to Plaintiffs, or engaged in constructive fraud, by (among other things) failing to tell them the truth with respect to all aspects of the venture, by failing to disclose to Plaintiffs that the SBA Loan with PNC Bank was fraudulently obtained and therefore in default, and by failing to disclose to PLAINTIFFS that Falgun Dharia was engaged in various schemes to defraud Plaintiffs by transferring, secreting and hiding funds that belonged to the business venture to his personal use and benefit.

64.     As a direct and proximate result of Falgun Dharia's breach of fiduciary duties, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of One Million Five Hundred Thousand ($1,500,000) Dollars.

## COUNT FIVE
### FRAUD

65.     Plaintiffs repeat and reallege paragraphs "1" through "46" as though fully set forth at length herein.

66.     Falgun Dharia engaged in numerous misrepresentations pursuant to the aforestated Scheme, set forth with particularity above.

67.     Falgun Dharia made these misrepresentations with knowledge of their falsity.

68.     In making these misrepresentations, Falgun Dharia intended to defraud Plaintiffs' and to induce PLAINTIFFS' reliance.

69.     Plaintiffs justifiably relied on Falgun Dharia's misrepresentations.

70.     As a direct and proximate result of Falgun Dharia's fraud, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of One Million Five Hundred Thousand ($1,500,000) Dollars.

## COUNT SIX
## CONSPIRACY TO DEFRAUD
### (Falgun Dharia and Others Presently Unknown)

71.     PLAINTIFFS reallege and restate paragraphs "1" through "46" as though fully set forth at length herein.

72.     In the alternative to Count FIVE, Plaintiffs allege that Falgun Dharia and others presently unknown, engaged in numerous misrepresentations pursuant to the aforestated Scheme, set forth with particularity above.

73.     Falgun Dharia and others presently unknown made these misrepresentations with knowledge of their falsity.

74.    In making these misrepresentations, they intended to defraud Plaintiffs and to induce Plaintiffs' reliance thereon.

75.    Plaintiffs were justifiably relied on these misrepresentations.

76.    Falgun Dharia had an agreement with others presently unknown whereby he knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and otherwise further this scheme to defraud Plaintiffs.

77.    Falgun Dharia engaged in numerous wrongful acts pursuant to his agreement with others presently unknown, including (among other acts) falsely misleading plaintiffs into making their monetary investment with them and believing that it would earn them a handsome profit.

78.    As a direct and proximate result of their conspiracy to defraud, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be at least One Million Eight Hundred Thousand ($1,800,000) Dollars.

**WHEREFORE**, Plaintiffs demand judgment from the Court as follows:

1.      To award damages against Falgun Dharia and others presently unknown with whom he conspired, for a sum of money equal to the amount of damages and/or losses Plaintiffs have sustained or will sustain,  in an amount of at least One Million Eight Hundred Thousand ($1,800,000) Dollars, the exact amount of which shall be determined at trial;

2.      To treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

3.      To award prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

4.      To award all costs of litigation incurred by Plaintiffs, including their reasonable attorneys' fees, costs, disbursements and expenses, pursuant to 18 U.S.C. § 1964(c);

5.      And to award such other and further relief as the Court deems just and equitable.

TRIAL COUNSEL:

November 15, 2009

John Bliss, Esq.
Attorney for Plaintiffs
34 South Broadway- Suite 605
White Plains, N.Y. 10601
Tel: (914)-761-3600
Fax: (914)-761-8736
E-MAIL: jbliss@appealpress.com

VENKAIGH DAMA

- 140-14 LABURNUM AVE
- FLUSHING, NY 11355
- (W) 718-886-4077/C- 917-886-5525
- ~~VENDAMA@GMAIL.COM~~
- KSDAMA@GMAIL.COM
- PRASAD- vengamma1@yahoo.com
- hbdharia@aol.com
- ~~dhillod@aol.com~~
-

Bensadigh, paul – e-mail fashionbypaul@aol.com.

New jersey -